LUKE TIERNAN *and others vs.* PETER RESCANIERE'S *adm'rs.*
*December,* 1838.

An act of congress awarded damages for the detention of a vessel sunk for the purpose of military defence, which were claimed by two distinct parties. The government paid one of them and took a bond, conditioned that if it should be judicially determined that the other claimant had a better right to the sum paid, that the party receiving the money should well and truly indemnify and save harmless *the United States* for making the said payment. Upon a bill filed to compel the defendant, who had received the money, to pay the complainant, or declare that he was entitled to the fund, or execute a release or remuneration of all claim and for general relief. It was held,

Tiernan, *et al vs.* Rescaniere's *adm'rs.*—1838.

1. That the government might have filed a bill of interpleader between them to have their rights adjudicated.

2. That she could not after payment institute that proceeding, but must then rely upon her bond alone.

3. That to recover on the bond, she must show a *judicial determination*, that the claimants who were not paid had the better right to the fund.

4. That on the ground of substitution, the complainants' rights were not more extensive than those of the United States in a proceeding upon the bond.

5. If the United States had taken a bond to indemnify *only*, she might have gone into equity upon a good and valid claim *on her* for the money against the respondents, to compel them to pay the money, instead of the United States.

6. When such a determination of the right as the condition of the bond called for was had, the United States on a principle of *quia timet*, and might have obtained a decree for specific performance of the stipulation, by coercing the obligors to pay back the money by them received, to the person rightfully entitled.

7. Had the right in this case been judicially determined so that the *United States* could have claimed indemnity, the question of the right of substitution would have arisen; and if it were possible, to have proceeded by way of substitution, in a case where the government (who could not be made a party to a suit) is the real debtor, as the government would not have been barred by limitations, so neither would the complainant.

When two persons claim the same sum of money from a third party, a payment to either does not invalidate the right of the other claimant.

When the relief sought in equity is not more comprehensive than that which might have been obtained in an action for money had and received, the complainant is barred, as he would have been at law, by the statute of limitations.

Appeal from *Chancery.*

The bill in this cause was filed on the 21st September, 1827, by *Peter Rescaniere*, against the appellants, alleging that on or about the 15th January, 1813, *John Hanna, John Craig, Dutton Williams* and *Charles Malloy*, became the purchasers of the *brig Swallow;* that in the year 1814, by the order of the United States authorities, she was sunk at the entrance of the harbour of *Baltimore*, for the defence of that port; that while sunken, on the 25th February, 1815, she was sold by her then owners, together with the benefit of all claim of her said owners against the United States for damage or otherwise, on account of said sinking, to the complainant, and a certain *Matthew Pascal*, for $6,200, which

was paid—that Pascal is dead, that the . . . . ne nained sunk until April, 1815, when she was raise : th ' 1 1816, the congress of the United States approp ed/ rge sum of money for the indemnification of the , ner the vessels sunk at *Baltimore, for damage* sustai ne l by d vessels, a due proportion of which was received by the said *Rescaniere* and *Pascal;* that in the year 1822, a further allowance was made by congress for the *detention* of said vessels from the 15th February, 1815, to the time of their delivery to their respective owners, that there was adjudged to the owners of the brig Swallow, $1,003 75, that *Rescaniere* purchased the claim from *Pascal,* and demanded the whole sum from the United States, and expected to receive the same without any opposition from the former owners of the said brig—but that the said *Hanna* and *Craig* fraudulently designing to deprive the complainant of said compensation for detention in violation of the terms of sale, under colour of their original purchase, (in conjunction with the said *Malloy* and a certain *Richard Williams,* who with said Malloy, had since became the executor of Dutton Williams,) did fraudulently receive from the government of the United States, on the 18th July, 1822, the sum of money awarded for the detention of the said *brig Swallow.* That *the United States* finding the right of the said *Hanna* and *Craig* to be questioned, obtained from them a bond, with one *Luke Kensted* as surety, conditioned that they would refund to *the United States,* if it should be judicially decided, that the said *Pascal* and *Rescaniere* have the better right to the said sum of money; and the said *Craig* and his associates, or either of them, shall well and truly indemnify and save harmless the said *United States* from making the said payment. The bill then alleged that *Hanna* and *Craig* had ever since kept the money, and refused to admit complainant's claim, or make any such declaration or release of their right as would entitle the complainant to be paid his claim by the United States, and that by reason thereof *the United States* have hitherto failed to pay complainant his just demand, that he without decree in his behalf

in the premises will be unable to secure to himself the equitable satisfaction due to him from *the United States:* that *Craig* is dead, and *Luke Tiernan* is his administrator. The bill then proceeded to pray, that the said *Hanna, Malloy, R. Williams,* and *Tiernan* as administrator of *Craig,* may be compelled to pay complainant the said sum of $1,003 75, with interest; that the defendants may be compelled to declare to or on behalf of the complainant, that he is entitled to said sum of money, or execute a release or renunciation of all claim thereto, in order to establish complainant's right to the satisfaction of the United States, and for general relief, &c.

The bond of *Craig, Hanna* and *Kenster,* was exhibited with this bill, and contained the following recital and condition: Whereas, the sum of one thousand and three dollars and seventy-five cents, has been awarded under the act of congress, passed on the 26th day of April last, for the detention of the brig *Swallow,* of which *John Craig, Charles Mallow, John Hanna* and *Dutton Williams* were owners at the time the said brig was sunk by order of the government, at the mouth of Baltimore harbour, and so continued until the 25th day of February, in the year 1815, on which day she was sold at auction, and bought by *Pascal* and *Rescaniere,* and the said *Craig, Malloy* and *Hanna,* in their own right, and the said *Malloy* and *Richard Williams,* as administrators of the said *Dutton Williams,* claim the said sum of money on the ground of ownership during the period aforesaid, and the said *Pascal* and *Rescaniere* also claim the same on account of their subsequent ownership; and whereas, it seems to *the United States,* that the said sum of money ought in law to be paid to the said *Craig,* and those claiming with him, the same has therefore been paid to *George Hay,* as attorney in fact for the said *Craig* and his associates: now the condition of the above obligation is such, that if it shall be judicially decided that the said *Pascal* and *Rescaniere* have the better right to the said sum of money, and the said *Craig* and his associates, or either of them, shall well and truly in-

demnify and save harmless the said *United States*, for making the payment aforesaid to the said *Hay*, then this obligation to be void, otherwise to remain in full force and virtue.

The answer of *Luke Tiernan* declared that he was a stranger to all the transactions mentioned in the bill, and left the complainant to his proof.

The answer of *Charles Malloy* denied that he had ever received any part of the sum claimed in the bill, and alleged that in 1822, he sold his claim for damages to *John Hanna*, one of the original purchasers of the brig. He also claimed the benefit of all defences of his co-defendants.

The answer of *John Hanna* showed that *Pascal* and *Rescaniere*, in 1824, had sued him, *John Craig*, *Charles Malloy*, and *Richard Williams*, at law, in *Baltimore* county court, for the same sum and claim; that a verdict and judgment was rendered against them in that action; that the claim was also barred by limitations; that nothing was sold to complainants but the hull and appurtenances of the *brig Swallow;* that no claim for damages and detention was sold to complainants. The bond to *the United States*, the claim made upon the government for detention and the payment by the United States were admitted, but the claim of the complainants either at law or in equity was denied.

Upon this bill and answers the parties proceeded to take proof, and the Chancellor (BLAND) decreed that the complainant was justly entitled to have and receive the sum of $1,003 75, awarded under the act of congress of 26th April, 1822, for the detention of the brig Swallow, as the legal assignee and representative of the owners of the said vessel; which said sum of money having been erroneously paid over by the United States under misrepresentation made to them, to the attorney in fact of *John Craig, John Hanna, Charles Malloy,* and *Richard Williams* as administrator of *Dutton Williams,* deceased, and having passed from their hands, as in the proceedings mentioned, into the hands of others, in such manner, that these defendants are now liable for the payment thereof, it is therefore ordered that the defendants

*Luke Tiernan,* executor of *John Craig, William Hanna,* administrator of *John Hanna,* deceased, forthwith pay or bring into this court, to be paid out of any assets now in their hands, or which may hereafter come into their hands, or into the hands of either of them, unto the plaintiff *Peter H. Turner,* as administrator of *Peter Rescaniere,* the sum of $1,003 75, with interest, and costs to be taxed by the register, and

From this decree the defendants in equity appealed.

The cause came on to be argued before STEPHEN, ARCHER, CHAMBERS and SPENCE, Judges.

GLENN, for the appellant, contended:

1. That the bill did not present a case within the jurisdiction of a court of equity. The claim might have been recovered at law—no obstacle there. *Adair vs. Winchester,* 7 *G. & J.* 114.

2. That it was barred by limitations—five years had elapsed. *Angel on Lim.* 349. *Hawley vs. Cramer,* 4 *Cow.* 718. 3 *Littell,* 381. 3 *Yerg. and Young,* 201.

3. That the judgment at law was conclusive in the case.

4. The decree is erroneous in making each party liable for the whole claim.

5. If not thus erroneous, the decree should have been against the representatives of the surviving owner of the brig.

6. The evidence does not sustain the bill in its facts.

7. No proof of complainant's title to the property.

MAYER, for the appellees, cited:

1 *Stor. Eq.* 471, 48. 2 *Ib.* 34, 35, 144, 145, 225. *Williams vs. Mayor of Annapolis,* 6 *H. & J.* 529. *Spring vs. S. Car. Ins. Co.* 8 *Wheat,* 268.

GLENN, in reply, cited:

*Murphy vs. Barron,* 1 *Har. & Gill,* 258. 1 *Stor. Eq.* 89. *Karthaus vs. Owings,* 2 *G. & J.* 430, 435.

Archer, Judge, delivered the opinion of the court.

According to the allegations contained in the bill of complaint, filed in this case, the complainant is seeking to recover of the respondents, a sum of money paid to them by the United States, which did not belong to them, and which in equity and good conscience they could not hold against the complainant.

So far as regards the recovery of the money received by the respondents, the complainant might have had redress by an action in a court of common law, in which tribunal it would have been barred by the statute of limitations, more than three years having elapsed between the receipt of the money and the filing of the bill.

Without therefore, deciding any thing upon the question of jurisdiction, unless the bill is more comprehensive from its peculiar allegations and the relief sought, than an action for money had and received, the complainant is equally barred in equity as at law ; a court of equity adopting by analogy the statute of limitations.

It appears from the bill of complaint that at the time of the payment of the money by *the United States* to the respondents, a bond was taken by *the United States,* payable to that government from the respondents as obligors, the condition of which was that " if it shall be *judicially decided* that the said *Pascal* and *Rescaniere* have the better right to the said sum of money, and the said Craig and his associates, or either of them, shall well and truly indemnify and save harmless *the United States,* for making the payment aforesaid, to the said Hay, (attorney for the obligors,) then the obligation to be void, otherwise to remain in full force and virtue," and the prayer of the bill is, that the respondents may be compelled to pay the complainant, the money by them received, together with interest thereon, and that they may be compelled to declare to, or in behalf of the complainant, that he is entitled to said sum of money, or execute a release or renunciation of all claim to said sum of money, in order to establish his claims to the satisfaction of the United States, and concludes with a prayer for general relief.

In the attitude in which this case stood when the parties were presenting their conflicting claims to the United States, that government might have filed a bill of interpleader against them, in which an adjudication might have been had, as to their respective rights; but she could not, after the payment of the money to one of the parties, institute such a proceeding, but must when she seeks redress, look alone to the bond which she has taken, and her power to recover upon that bond could only exist upon her showing a judicial determination, that *Pascal and Rescaniere* had the better right to the money, and if the complainant had a right to be substituted to *the United States*, he could only have the remedies to which the United States would have been entitled, which would amount to nothing, as there has been no judicial determination that *Pascal and Rescaniere* has the better right. If *the United States* had taken a bond to indemnify only, she might have gone into equity upon a good and valid claim by the complainants upon her, for the money against the respondents, to compel them to pay the money instead of *the United States*, but she has not taken a bond to indemnify her, unconditionally, but upon the condition that there shall be a judicial determination of a superior right elsewhere existing. When such a judicial determination shall be had, then upon a principle of *quia timet*, the United States might have obtained a decree for a specific performance of the stipulation, by coercing the obbligors to pay back the money by them received to the person rightfully entitled thereto; and had the right of the party been judicially settled, so that the United States might have claimed indemnity, the question of the right of the complainants to be substituted would have arisen, and as in such a case the United States would not have been barred by limitations, so neither would the complainants, if it were possible for them to proceed upon the principle of substitution in a case where the government, which cannot be made a party to the suit, is the real debtor. A bill in the nature of a bill of interpleader, could not be filed. As to the United States, she is embarrassed with no conflicting claims;

she has undertaken to decide the right by paying the money in controvesy, to the defendants, who upon one contingency alone, can be called upon to refund. And the complainant could not treat his proceedings in that light, as there are no conflicting rights between third persons to be adjusted, for as between *the United States* and the defendants, there could only exist conflicting rights when the condition of the bond was forfeited. Indeed insuperable difficulty would be found in treating the bill as one of that character, from the circumstances that *the United States* would not be a party to the suit; if the defendants, wrongfully, or by fraud, procured payment to be made to them of the funds in controversy, it would be still such a claim as could be reached by a suit at law, and the case being barred at law, is equally barred in equity.

It is not perceived that the complainant's claim against the government is at all weakened or impaired by any mistaken payment of the money, which he was justly entitled to receive, nor does the contract entered into with the defendants, or the payment of the money, furnish the slightest impediment to the complainant's recovery of the government. In the case of a payment made to an individual under the same circumstances, it clearly would not. It is true the sovereign power has an immunity from suits, but that very immunity is grounded on the maxim, that the sovereign power is always ready and willing to do justice, and the same justice it is to be presumed, would be rendered by the United States upon a presentation of the claim with well authenticated proofs, as would and could be coerced from an individual under the like circumstances, although they had, under a mistaken idea of the rights of another person, paid the money to him, to compel the defendants to declare in the language of the prayer, that the complainant is entitled to the money, and to release or renounce all claim to it, if a court of chancery possessed the power, could not place the defendants' claim on the government upon any stronger ground than it now stands; as a payment by a debtor to a wrong person could in one manner release him from his obligations to pay the person justly entitled thereto.

But if the object of the complainant be in fact, by obtaining such a decree, a settlement of the right to the funds in dispute, it must be followed by a decree for the money against the defendants, upon the ground either of substitution to the rights of *the United States*, which we have seen cannot be done, or upon the same principle he could in an action for money had and received, recover at law.

But viewing the case in this light, limitations operate as a bar, wherefore, we are of opinion, that the decree of the chancellor should be reversed with costs.

DECREE REVERSED.