(Decided May 5th, 1863.)

THE MERCHANTS MUTUAL INS. CO., *vs.* CHARLES BUTLER.

MARINE INSURANCE: NEGLIGENCE.—If loss be caused by a peril insured against, the underwriters are liable, although the remote cause be the negligence of the master and crew, and that, whether barratry be insured against or not.

OVER-LOADING.—A policy having attached upon the first sailing of the vessel, although she may have been afterwards rendered unseaworthy by being over-loaded at an intermediate port of lading, the underwriters are not for that reason discharged from liability on their contract, for a loss which afterwards happened from the dangers of the seas, even if such over-loading could be considered the remote cause of the loss.

Where the unseaworthiness has supervened during the progress of the voyage, and after the policy had already attached; HELD, that the over-loading of the vessel at an intermediate port does not amount to a breach of the implied warranty of sea-worthiness and avoid the policy.

CONTRACTS, to which sovereigns are parties will be dealt with by Courts of Justice in the same manner as contracts between private persons; they will not assume that a sovereign power will refuse to do what any private person would be obliged to do.

SHIPPER LIABLE FOR FULL FREIGHT.—If a vessel damaged during the voyage puts into a port of distress, and *is capable of being repaired so as to complete the voyage*, no matter what delay may occur, the shipper has no right to intervene and demand the goods at such intermediate port, without paying the full freight for the voyage.

INSURER NOT ANSWERABLE FOR LOSS.—In the case last stated, if the captain improperly surrenders the goods to the shipper, without demanding full freight, and it is thereby lost, the insurer of freight will not be answerable for the loss.

FREIGHT "PRO RATA:" PARTIAL LOSS.—A vessel being disabled to such an extent as not to admit of being repaired so as to complete the voyage, the demand of the cargo at the intermediate port of distress by the charterer, does not render it liable, if at all, for more than freight *pro rata itineris,* and the underwriter remains liable for a partial loss.

APPEAL from the Superior Court of Baltimore City :

This was an action of *trespass on the case* brought by the appellees against the appellants, in the Superior Court of Baltimore City, on the 6th of August 1856, on a policy of insurance issued May 15th, 1855. The defendants pleaded the *general issue,* and an agreement was afterwards filed waiving all errors of pleading and allowing the defendants "to give in evidence any defence that could be made by any special plea or pleas." The testimony in the case is stated in the opinion of this Court.

*Exception.* At the trial of the cause the defendants offered to the Court the following prayers :

*1st Prayer.* The defendants pray the Court to instruct the jury, that if they find from the evidence, that the Vandalia was unseaworthy at the point of time when the vessel arrived at Montevideo, (if the jury find she did so arrive,) then the plaintiff is not entitled to recover, unless the jury find she was afterwards rendered seaworthy.

*2nd Prayer.* The defendants pray the Court to instruct the jury, that if they find from the evidence, that the Vandalia was rendered unseaworthy before her sailing from the Chincha Islands, by the unreasonable overloading of the vessel by said master, and continued unseaworthy until the voyage was abandoned by the sale of the vessel, (provided

the jury find such abandonment and sale and sailing from the Chincha Islands,) and that the Vandalia, after sailing from the Chincha Islands, encountered none but the perils ordinarily incident to such a voyage, then the plaintiff cannot recover, provided the jury find that the plaintiff was owner of the Vandalia, and also find that the contract of affreightment given in evidence by the plaintiff, was made by said master, for and on behalf of the plaintiff, as owner of the Vandalia; and that in pursuance of such affreightment, a cargo of guano was carried from the Chincha Islands to Callao, and that the transhipment of the cargo by the said master to another vessel, to be forwarded to the port of destination, at a lower rate of affreightment than that specified in said contract of affreightment, could have been accomplished by said master at said Callao, but that said master was prevented from so doing by the Peruvian Government, and provided the jury find that said Peruvian Government, were, in fact, the principals as charterers in said contract of affreightment.

*3rd Prayer.* The defendants pray the Court to instruct the jury, that if they believe from the evidence, that the charter of affreightment given in evidence by the plaintiff, (provided the jury find that a charter of affreightment was made by the plaintiff on the one part, and the other parties as therein set out,) was made for and on behalf of the Peruvian Government as charterers, and that a cargo of guano was laden on the Vandalia at the Chincha Islands, under and in pursuance of said charter of affreightment, and that the vessel arrived with said cargo at Callao, and that said vessel was then found to be unable, by damage from some of the perils insured against, to proceed to her port of destination, and that the master of the Vandalia could have obtained another vessel at said Calloa, by which to forward said cargo to its destined port, at a lower rate of freight than that specified in the charter of affreightment, and was desirous and willing thus to forward said cargo, or so much of it as was in hand at Callao, by trans-

shipment to another vessel; but that the said master was prevented by the Peruvian Government from so doing, and that said Peruvian Government, by its agents, took possession of the said guano, and that it was shipped wholly or partly by that government, without the assent and against the will of said master of the Vandalia, then the plaintiff cannot recover, provided the jury find from the evidence, that the plaintiff was the owner of the said Vandalia.

*4th Prayer.* The defendants pray the Court to instruct the jury, that the plaintiff is not entitled to recover in this cause, if the jury find from the evidence, that the Vandalia was unseaworthy at that period of the voyage when the vessel arrived at Montevideo, provided the jury find such policy to exist as therein set forth, and such voyage to have occurred, or that unseaworthiness was afterwards caused by the action of worms, or the ordinary heat of the climate encountered on the voyage, or from ordinary wear and tear of the vessel, or from any inherent defect in said vessel, or from the effect and co-operation of any or all of these causes, in connection with the ordinary action of the winds and waves in the voyage, covered by either of the policies in suit, provided the jury find that both such policies exist as set forth in the documents given in evidence by the plaintiff.

*5th Prayer.* The defendants pray the Court to instruct the jury, that if they find from the evidence, that the Vandalia was unseaworthy at the point of time when she first arrived at Callao, (if they find that she did so arrive,) then the plaintiff is not entitled to recover on the policy effected with the Merchants' Mutual Insurance Co., and given in evidence in this cause, unless the jury shall further find that the Vandalia was afterwards rendered unseaworthy.

*6th Prayer.* The defendants pray the Court to instruct the jury, that the burden of proof is on the plaintiff, that the loss occurred from one of the perils insured against, and that the jury are not entitled to infer from the mere

circumstance of a loss having happened, that it occurred from a loss insured against.

The Court (MARTIN, J.) granted the prayers Nos. 1, 4, 5 and 6, and rejected prayers Nos. 2 and 3, and gave to the jury the following instruction:

"If the jury find that the leak and damage in question happened in the course of navigation of the ship, under circumstances stated by Capt. Heaps, and that there was no inherent weakness at the inception of the risk in the ship, that then the jury may find that the disaster was produced by some extraordinary action of the wind and waves."

To the rejection of which said prayers Nos. 2 and 3, and to the granting of said instruction given by the Court, the defendants excepted, and appealed to this Court.

The cause was argued before BARTOL, GOLDSBOROUGH and COCHRAN, J.

*A. S. Ridgely* and *St. Geo. W. Teackle,* for the appellants :

In every policy of marine insurance, there is an implied warranty that the ship shall be seaworthy for the voyage; by which is meant that she shall be in a fit state as to repairs, equipments, crew and *all other respects*, to encounter the ordinary perils of the voyage insured, at the time of sailing on it. 2 *Parson's Mar. Law,* 132. 1 *Arnould on Ins.,* 652. 1 *Phillips on Ins.,* sec. 694. *Geo. Ins. & Trust Co., vs. Dawson,* 2 *Gill,* 371.

The ship must be properly constructed of proper materials, and in these respects as in others adapted to the risk assumed; *she must not be overloaded,* but due regard must be had to the *weight* and *quantity* of the cargo. 1 *Phillips on Ins.,* sec. 705. *Weir vs. Aberdeen,* 2 *Barn. & Ald.,* 320. 2 *Parson's Mar. Law,* 137. *Cin. Mut. Ins. Co., vs. May,* 20 *Ohio,* 211.

These warranties are strictly conditions precedent to the obligation of insurance, and if these conditions be broken

at the inception of the risk in any way whatever, and from any cause whatever, there is no contract of insurance, the policy being wholly void. 2 *Parson's Mar. Law*, 133.

In the absence of the owners, the master is their agent and must fulfil for them these warranties, and a breach of them by such an agent is a breach by the principal. 2 *Parson's Mar. Law*, 140.

The interest in the freight under the contract of affreightment, accrued on the commencement of the first passage. 1 *Phil. on Ins.*, secs. 328, 332, 334, 335, 649, 945. 1 *Arnould on Ins.*, 657.

The warranty applies to the original sufficiency only, *to seaworthiness in the first instance.* *Rusk vs. Royal Ex. Co.*, 2 *Barn. & Ald.*, 83. *Walker vs. Maitland*, 5 *Barn. & Ald.*, 173. *Bishop vs. Pentland*, 7 *Barn. & Cresw.*, 219. *Patapsco Ins. Co., vs. Coulter*, 3 *Peters*, 222. *Ins. Co. of Alex., vs. Lawrence*, 10 *Peters*, 507. *Waters vs. Mer. Ins. Co.*, 11 *Peters*, 218. *Copeland vs. N. E. Ins. Co.*, 2 *Met.* 432.

In the leading case of *Dixon vs. Sadler*, the Court held, "that the vessel, crew and equipments, having been *originally* sufficient," that is to say, having been *sufficient at the out-set*, "they considered the assured had done *all he contracted to do;* and the underwriters, *therefore,* must be liable for the loss which, though remotely referable to the misconduct of the master and crew, was the immediate effect of the perils insured against." 1 *Arnould on Ins.*, 659. *Dixon vs. Sadler*, 5 *Mees. & Wels.* 405. *Same case in* 8 *Mees. & Wels.* 895. 1 *Arnould*, 659, 660 and 666, and *sec.* 259, 2d *Edn.*

The doctrine is now firmly established, that although an underwriter is liable for a loss by a peril insured against, even though the peril resulted from the negligence of the master and crew, yet if the vessel becomes unseaworthy and afterwards leaves an intermediate port in that condition, when she might have been repaired there, and is lost in consequence of that neglect on the part of the captain to repair her, the underwriters are not held liable. 2 *Par-*

son's *Mar. Law*, 139, and note, 140. *Paddock vs. Frank. Ins. Co.*, 11 *Pick.*, 227. *Hazzard vs. N. E. Ins. Co.*, 1 *Sum.*, 218, 230. Same case in 8 *Peters*, 557. *De Blois vs. Ocean Ins. Co.*, 16 *Pick.*, 218. *Stewart vs. Fire Ins. Co.*, 1 *Hump.*, 242. *Dupeyre vs. Ins. Co.*, 2 *Rob.* (*La.*) 457.

The very object of insurances is to indemnify against *fortuitous* losses, which may occur to men who conduct themselves with honesty and ordinary prudence. If the misconduct is the efficient cause of the loss, the assurers are not liable. The indemnity stipulated is only against *the perils described in the policy, as far as they operate upon the property insured adversely*, and not through the medium of any act or neglect on the part of the insured himself, producing the loss of the property insured. *Thompson vs. Hopper*, 88 *E. C. L.*, 948. Same case in 38 *E. Law & Eq. Rep.*, 45. *Genl. Mut. Ins. Co., vs. Sherwood*, 14 *Howard*, 365.

As to the neglect of the master to tranship the cargo, and thereby earn freight after the vessel had returned to Callao in distress, and the effect of surrendering the cargo to the freightors without demanding freight; See *Phil. on Ins.*, sec. 1057. *Schieffelin vs. N. Y. Ins. Co.*, 9 *Johns.*, 21. *Bradhurst vs. Col. Ins. Co.*, 9 *Johns.*, 17. 2 *Par. Mar. Law*, 139, 386, 388. *Luke, et al., vs. Lyde*, 2 *Bur.*, 887. *Abbott on Ship.*, 441, 442. *Ins. Co., vs. Turner*, 20 *E. L. & Eq. Rep.*, 46, 35, 40. 2 *Phil. on Ins.*, sec. 1631. *Tindall vs. Taylor*, 28 *E. L. & Eq. Rep.*, 213, &c.

As to the appellants' 3rd prayer :

The party who insures freight must have an *inchoate right to it:* that is to say, he must be in such a position in regard to the expected freight, that nothing could prevent him from ultimately having a perfect right to it, but the intervention of the perils insured against. Such inchoate right accrues the instant the ship has broken ground on the chartered voyage, and the owner is in a condition to earn freight, provided she or the cargo arrive safely at their destination.

If, by the perils of the sea, they are prevented from thus arriving, the ship owner forfeits his claim on the merchant for freight; and the object of a policy of insurance is to protect him against such forfeiture. It is a guaranty on the part of the insurer that the earning of the freight shall not be prevented by the perils insured against. 1 *Arnould on Ins.*, 200. 2 *Phillips on Ins.*, sec. 1450. *Hugg vs. Augusta Ins. Co.*, 7 *Howard*, 604. *Scottish M. Ins. Co., vs. Turner*, 20 *E. L. & Eq. Rep.*, 40.

For a loss of freight, occasioned by any other cause whatever, than the perils insured against, the underwriters are not responsible. They do not contract that it shall be earned beneficially to the ship owner; and if it be lost after it has been earned, by some circumstance unconnected with the contract existing between the assured and assurer, the latter are not liable. *Scott. M. Ins. Co., vs. Turner*, 20 *En. L. & Eq. Rep.*, 35, 36, 40, 42. *Bradhurst vs. Col. Ins. Co.*, 9 *Johns.*, 17.

After a contract of affreightment is entered into, it is not dissoluble except by mutual consent or by operation of law. If broken by one of the contracting parties without the consent of the other, the party breaking it is fully liable on the contract. *Tindall vs. Taylor*, 28 *E. L. & Eq. Rep.*, 213, &c.

The contract is an entire one; the shipper is not bound to pay freight, unless there is a performance on the part of the carrier; and after the shipment of the cargo on the voyage, the shippers have no right to demand it at an intermediate port, short of the port of destination, without full payment of freight for the voyage.

The fact of the vessels being injured and obliged to seek a port of distress, does not alter the case, the master has still a right to carry on the cargo to the port of destination, and if the ship be capable either then, or within a reasonable time, of carrying the cargo to such port, there is no ground to say that he is not entitled to earn full freight, and the shippers of the cargo cannot insist upon

changing the original contract, *in invitum*, and cut him off from all freight, or dismiss him with a *pro rata* freight. *Flanders on Shipping*, 250, 478. *Jordan vs. Warren Ins. Co.*, 1 *Story R.*, 342, 352. *Caze vs. Balt. Ins. Co.*, 7 *Cranch.*, 358, &c. *Bradhurst vs. Col. Ins. Co.*, 9 *Johns.*, 17.

A constructive loss of freight, that is to say, when the cost of transhipment amounts to fifty per cent., does not obviate the duty to tranship. There is no total loss of freight except by a formal abandonment, or total loss absolutely of the cargo in specie. 2 *Phillips on Ins.*, sec. 1631. 2 *Parson's Mar. Law*, 385, 390. 20 *Eng. Law & Eq.*, *Rep.*, 46. *Mordy vs. Jones*, 10 *Eng. C. L. Rep.*, 366. 9 *Johns. Rep.*, 28.

In the case of *Shipton vs. Thornton*, 36 *Eng. C. L. Rep.*, 156, Lord Denman held, that "the owner or master was bound to convey the cargo to its destination by every practicable method; in another ship if his own was not available. If prevented by the owner of the goods, he is entitled beyond question to the whole freight originally agreed upon, and if the master desires to send them on and is prevented by the shipper of the goods, the *whole freight is earned, he has performed his contract.*"

The same doctrine is asserted by the Supreme Court of the United States. See *Hugg vs. Augusta Ins. Co.*, 7 *Howard*, 604. *Robinson vs. Com. Ins. Co.*, 3 *Sumner*, 220. 2 *Phil. on Ins.*, sec. 1633. 1 *Arnould on Ins.*, 187.

When the performance of a contract is prevented by one of the contracting parties, as against him it is performed. Willingness to perform on one part and prevention on the other, is performance in law as against the latter.

The principle is thoroughly settled, that if there is no consent of the ship owner, and the charterer takes the goods, he is liable for full freight, from the oldest to the latest decisions. *Luke vs. Lyde*, 2 *Burrows*, 887. *Abbott on Ship.*, 441, 442. *Shipton vs. Thornton*, 36 *Eng. C. L. Rep.*, 157. 28 *Eng. Law & Eq. Rep.*, 210. 2 *McLean*, 426. 10 *Eng. C. L. Rep.*, 366. 23 *Pickering*, 410, 411. 2 *Par-*

I. v. 20.

son's Mar. Law, 385 to 388.     Bradhurst vs. Col. Ins. Co.,
9 Johns., 17.

The agent, cannot, on an undiscovered principal, repudiate his responsibility.   No principle is better established.
Ford vs. Williams, 21 Howard, 289.

Sovereigns are, in Courts of Justice, subject to the same
law as other persons.  Tiernan vs. Rescaniere, 10 G. & J.,
225.   Bradhurst vs. Col. Ins. Co., 9 Johns., 17.

Courts will not assume that a sovereign power will refuse to do, what any private person would be obliged to do.
See cases last cited.

*Lastly.*  As to the instruction of the Court to the jury :

If the arguments submitted on the 2nd or 3rd prayer of
the defendants be correct, this instruction should not have
been given.

1st.  Because it withholds from the jury all question of
unseaworthiness, produced by the unreasonably overloading of the vessel, which, it is contended, discharged the
policy.

2nd.  Because it ignores the doctrine, that the seizure of
the goods at the intermediate port of Callao by the charterers, when the captain was both willing and able to forward them in another ship at a lower rate of freight than
that called for by the charter-party, entitled the assured
to full freight and amounted to a performance in law of the
contract on his part.   1 *Arnould on Ins.*, 187.   2 *Parson's*
*Mar. Law*, 132 and 137, &c.   *Weir vs. Aberdeen*, 2 *Barn.*
*& Ald.*, 320.   1 *Phillips on Ins.*, sec. 705.   2 *Parson's Mar.*
*Law*, 385, 386, 387. *Shipton vs. Thornton*, 36 *Eng. C. L.*
*Rep.*, 156.   7 *Howard*, 604, and 3 *Sumner*, 220.

*Again.*  The instruction of the Court was erroneous, because it assumed facts which, according to the decisions of
the Court of Appeals, ought to have been found by the
jury.  *Denmead vs. Coburn*, 15 *Md. Rep.*, 45.     *Balt. &*
*Susq. R. R. Co.*, vs. *Woodruff*, 4 *Md. Rep.*, 252.     3 *Md.*
*Rep.*, 176.   6 *Gill*, 259.    Also, 6 *G. & J.*, 70.   *Gaither vs.*
*Martin*, 3 *Md. Rep.*, 162.

*C. F. Mayer* and *J. Stewart,* for the appellee :

I. The instruction granted, agreeably in all its terms to the fourth prayer of the appellant, connected with the Court's own final instruction, covers all the points of the rejected second prayer.

The conclusive views of the prayers are :

1st. The supposed overloading connected with the leak as an operative cause, is not for the finding of the jury. Besides which, a supervening unseaworthiness, after the beginning of the risk, does not affect the insurance, unless that special defect occasions the loss claimed for. 1 *Phil. on Ins.,* secs. 733, 734, 735. *Paddock vs. Franklin Ins. Co.,* 11 *Pick.,* 227.

2nd. If the vessel was seaworthy at the beginning of the risk, a subsequently arising unseaworthiness, within the sphere of duty of the master as such, and his fault for want of care, does not exonerate the insurer from the loss by peril of the seas, although the consequence of that fault, or promoted by it. This doctrine of *proxima causa,* is our rule, as it is that of the English Courts. 1 *Phil. on Ins.,* secs. 695, 731, 733. 1 *Marsh. on Ins.,* 165. *Ins. Co., vs. Dawson,* 2 *Gill,* 365. *Chase vs. Ins. Co.,* 5 *Pick.,* 51. 10 *Pick.,* 507. *Ins. Co., vs. Sherwood,* 14 *How.,* 364, 365, 366. *Walker vs. Maitland,* 5 *Barn. & Ald.,* 171. *Busk vs. Ins. Co.,* 2 *Barn. & Ald.,* 73. *Bishop et al., vs. Pentland,* 7 *Barn. & Cress.,* 219. 2 *Phil. on Ins.,* sec. 704.

II. The third prayer of the appellant was properly refused, for these among other considerations :

1st. The termination of the voyage by a necessity growing out of the perils insured against, at once created a claim for a total loss of freight against the insurers. In such an exigency the master became the agent of the insurers, and all that occurred as to transhipping, or omitting it, implicated them and not the insured; and the claim against Peru (if any accrued) for preventing transhipment, was an interest belonging to the insurers. But, in no event, could such a claim having accrued exonerate the insurers, if the

freight was actually, or constructively, totally lost. 2 *Phil. on Ins.*, 351, 355. *Coolidge vs. Ins. Co.*, 15 *Mass.*, 345. *McGaw vs. Ins. Co.*, 23 *Pick.*, 405. *Ins. Co., vs. Coulter*, 4 *Wend.*, 45. 2 *Phil. on Ins.*, *secs.* 1461, 1462 and 1631. *Jordan vs. Ins. Co.*, 1 *Story Rep.*, 342, 358. *Ins. Co., vs. Dawson*, 2 *Gill*, 372.

2nd. So far as the prayer assumes that there was a duty in the master, to tranship under all circumstances, and *at any freight less than the charter freight*, if transhipment were practicable, that assumption, relatively to the insurance contract is not authorized; nor indeed in any relation. Unless by carrying on the cargo, a large proportion of the original freight is saved, (at least fifty per cent., the new freight to be that much less,) no obligation to tranship can be pretended to attach. 2 *Phil. on Ins.*, *secs.* 1626, 1632 and 1639. *Jordan vs. Ins. Co.*, 1 *Story Rep.*, 358. *Shipton vs. Thornton*, 9 *Adol. & El.*, 314. *Whitney vs. Ins. Co.*, 18 *Johns.*, 208. *Ins. Co., vs. Contee*, 4 *Wend.*, 45. 2 *Phil. on Ins.*, 351, 355.

3rd. Aside from every other view, this interference of Peru, although she had a proprietary relation, was an act of political power or prerogative, whether right or wrong, and a peril insured against as a "restraint of princes or people." 2 *Phil. on Ins.*, *secs.* 1108 and 2135.

BARTOL, J., delivered the opinion of this Court:

This action was instituted by the appellee on a policy of insurance, underwritten on the 15th day of May 1855, by the appellant, upon freight to the amount of $5000, of the ship Vandalia, on her then voyage. By the charter-party, made at Montevideo on the the 11th day of December 1854, by Zumeran and Co., the agents of the Peruvian Government, the voyage was to begin at the port of Callao in Peru; whence the ship was to proceed to the Chincha Islands, and there taking in a full and complete cargo of guano, was to proceed to Callao for a final clearance, and thence to a port in Europe, or in this country. The freight

stipulated to be paid, was £5 per ton. The guano was the property of the Peruvian Government, for whose account the vessel was chartered.

The vessel left Callao in April 1855, for the Chincha Island, and obtained her cargo, and proceeded thence to Callao, where she arrived on the 25th June 1855. She left Callao for her port of destination, Gibraltar, on the 8th of July, but returned to Callao on the 11th of July, in consequence of having sprung a leak. At Callao the cargo was unladen, and a survey made of the vessel, showing that the repairs necessary, would cost more than the value of the ship. The captain failing to obtain money on bottomry to make the repairs, the ship was sold. When the cargo was unladen, the Peruvian Government took it out of the captain's control and shipped it by other vessels.

The plaintiff claimed in this suit as for a total loss of the freight. By agreement of counsel, all errors of pleading were waived.

At the trial the defendant asked six prayers, of which the first, fourth, fifth and sixth were granted; but the second and third prayers being refused, the defendant excepted. The defendant also excepted to the instruction given by the Court to the jury.

The second and third prayers of the defendant, presented two grounds of defence to the action, which have been relied on in the argument of this appeal :

1st. That the plaintiff is not entitled to recover if the jury should find that the Vandalia was rendered unseaworthy, before sailing from the Chincha Islands, by the unreasonably overloading of the vessel by the master.

2nd. That the plaintiff cannot recover if the cargo belonged to the Peruvian Government, and the charter was made on its behalf, and if on finding the vessel unable to proceed on her voyage from damage by perils insured against, the master could have procured another vessel by which to send forward the cargo to its destined port, at a lower freight than that specified in the charter, and was

willing to do so, but the Peruvian Government prevented him from doing so, and took possession of the cargo, and without his assent, and against his will, shipped it wholly or in part.

With regard to the first ground of defence, an examination of the authorities has satisfied us, that the underwriters cannot claim exemption from liability, even if the jury should find that the ship had been unreasonably overloaded on leaving the Chincha Islands. The rule on this subject is thus stated by *Phillips*, in his work on *Insurance*, *vol. 1, 415, (4th Edition,) sub-section* 733. After referring to a number of decisions the author says: "I conclude, however, the better doctrine is, that where the vessel is seaworthy in the outset, loss by perils insured against, consequent upon subsequent unseaworthiness, occasioned by the negligence or mistakes of the master and crew, without fraud, is at the risk of the underwriters."

In *Parson's Treatise on Maritime Law, vol. 2, p.* 212, *note* 1, will be found collected a great number of cases, in which this question has been considered, and the result deduced from the authorities is thus succinctly stated: "It is now, however, settled, both in England and in this country, that if the loss is caused by a peril insured against, the underwriters are liable, although the remote cause be the negligence of the master and crew, and that whether barratry be insured against or not." It is unnecessary to make particular reference to the cases in which this rule has been recognized; among them is the case of *The Georgia Ins. & Trust Co.*, vs. *Dawson*, 2 *Gill*, 365. In our opinion this rule of law is conclusive of the point now under consideration. The policy in this case, as we have seen, attached upon the first sailing of the Vandalia from Callao, and although afterwards she may have been rendered unseaworthy by being overloaded at the Chincha Islands, the defendants are not, for that reason, discharged from liability on their contract, for a loss which afterwards happened from the dangers of the seas, even if the alleged over-

loading could be considered as a remote cause of the loss. We are unable to distinguish the case from the well settled rule, *"causa proxima non remota spectatur."* This would be our conclusion upon this part of the case; even if the prayer required the jury to find that the overloading contributed to the damage and loss. But the point, as presented by the prayer, is, that the alleged overloading was a breach of the implied warranty of seaworthiness, which avoided the policy. According to the authorities, no such consequence follows where the alleged unseaworthiness has supervened during the progress of the voyage, and after the policy had already attached.

2. The questions involved in deciding upon the second ground of defence, are of much importance, and, as presented in this case, are somewhat novel, and by no means of easy solution. We have not found any adjudicated case strictly analogous to the present, or which furnishes a controling precedent for our guide in its determination.

In this case the shipper, owning the cargo, and on whose account the vessel was chartered, is a sovereign government, entitled to exercise full and complete jurisdiction and authority within its own territory. When, therefore, the cargo was unladen at Callao, it was not in the power of the captain to retain the cargo, for the purpose of forwarding it by another vessel, against the will and in opposition to the authority of the Peruvian Government. But notwithstanding this, we are of opinion that the case must be governed by the same rules that would control it if the charterers were private citizens, whose contracts might be enforced in Courts of Justice.

In passing upon contracts to which sovereigns are parties, Courts of Justice deal with them in the same manner as with contracts of private persons, and "will not assume that a sovereign power will refuse to do what any private person would be obliged to do." *Tiernan vs. Rescanicre,* 10 *G. & J.,* 225.

Keeping this principle in view, we proceed to pass upon

the main question presented by the defendant's third prayer.

It is contended that it was the duty and the right of the captain to forward the cargo by another vessel, and thus earn the freight, and if prevented from so doing by the Peruvian Government, (the charterer in this case,) then he was entitled to demand the whole freight; that it had been earned, and if lost, that the loss occurred by the wrongful act of the charterer, or by the neglect of the captain, in failing to demand the freight, and not by a peril insured against; and, therefore, the underwriters are not answerable on the policy for any part of the loss.

It seems to be well settled, that if the vessel becomes damaged during the voyage, and puts into a port of distress, *and is capable of being repaired so as to complete the voyage,* no matter what delay or detention may occur, the shipper has no right to intervene and demand the goods at such intermediate port, without paying the full freight for the voyage. In such case, if the captain improperly surrenders the goods to the shipper, without demanding full freight, and it is thereby lost, the insurer of freight will not be answerable for the loss. This principle was distinctly decided in 1 *Story Rep.*, 342, *Jordan vs. Warren Ins. Co.*, and by the Supreme Court of the United States, in *Hugg vs. Augusta Ins. & Banking Co.*, 7 *Howard*, 595; see also, 2 *Phillips on Ins.*, secs. 1633, 1641, and the cases cited.

Such is the well settled law when the vessel is capable of being repaired, and of resuming and completing the voyage. This is not, however, the case before us. Here the vessel could not be repaired, except at such cost as the captain or owner was not bound to incur, and was, therefore, incapable of completing the voyage, and performing the contract. She was rightfully sold by the captain, and thus the voyage was broken up. What then were the rights of the parties in such circumstances?

It is said that the captain might have procured another vessel, and that it was his absolute right and duty to do

so, and to forward the cargo; and that the shipper had no right to interfere with him in that particular, and the consequence of such interference and demanding the cargo, was the same as if the ship had been *repairable* and capable of performing the voyage. We do not concur in this view. In 2 *Phillips, sec.* 1634, it is said: "Where the ship is wrecked or disabled, and the shipper himself, or by his agent, prefers to take his goods at an intermediate port, rather than to have them forwarded to the port of destination, and the ship owner, himself, or by his agent, chooses to deliver the goods to the shipper rather than to reship them for the port of destination; this is a case of freight *pro rata,* earned, and accordingly a case of partial loss of freight;" and in *sec.* 1635, it is said, in such case "the master may retain the cargo to forward it by another suitable ship in due time, unless the shipper will pay him the amount of salvage that he might thus realize on freight for the original ship." And in *sec.* 1639, the law is stated to be, that "If (in such case) the master unjustifiably neglects to procure another (ship) to carry it on and earn freight, the loss on freight will be only the amount which must have been paid to such other ship."

It will be found by an examination of the cases cited by *Phillips,* that the conclusions stated by him are supported by authority; as they are certainly consistent with principles of equity and justice. The only reason why the ship owner, or his agent the master, has a right to retain the cargo and forward it by another vessel, is to enable him "to realise the proportion of freight according to the part of the voyage performed by the original ship." And precisely the same result is accomplished, if in the case where the original ship to which both the charter party and the policy of insurance relate, has been lost or disabled from performing the voyage, the right of the shipper to demand the goods at an intermediate port, be acknowledged; subject, however, to the right of the ship owner to demand a proportionate part of the freight, according to the portion

S. v. 20.

of the voyage which has been performed; see 2 *Phillips, sec.* 1366.

This author after citing the case of *Bradhurst vs. Columbia Ins. Co.,* 9 *Johnson's R.,* remarks in *note* 1, *to sec.* 1639: "That decision is not in accordance with the doctrine stated in the text; but the attention of the Court was probably not directed to the question whether the case was one of partial loss."

We think that in this case the counsel for the appellant are in error in supposing, that the demand of the cargo at Callao by the charterer made it answerable for the full freight, and relieved the underwriters from liability on the policy. If answerable at all, the charterer was bound only for freight *pro rata intineris,* and the underwriter would remain answerable for a partial loss.

To show that in such a case as this, a technical abandonment is not necessary, see 6 *Taunt.,* 68, and 8 *Taunt.,* 755.

From the views which have been expressed, it follows that there was no error in refusing the defendant's second and third prayers, asking instructions to the jury denying the right of the plaintiff to recover any thing; and, it also follows, that the objections made by the appellants to the Court's instruction given to the jury, cannot be sustained.,

*Judgment affirmed.*

(Decided May 22nd, 1863.)