# EDMUND SAVAGE *v.* THE CORN EXCHANGE FIRE AND INLAND INSURANCE CO.

*Insurance—Carrier's Insurable Interest—Negligence must cause Damage.*

A common carrier has an insurable interest in goods being transported by him to the extent of advances made, freight, and his legal obligations to the owner of the cargo, which is the fair value of the property carried by the contract of indemnity

Although the Plaintiff was guilty of negligence, it will furnish no defence unless such negligence contributed to the loss and damage complained of.

Where the damage consisted in the sinking of a boat loaded with grain and the injury to the grain, the extent of the damage involves the price of the grain at the place of the disaster.

BOOKES, J.—This is an appeal from the judgment of the Superior Court of the City of New York.

On the trial, the Plaintiff recovered, and the judgment was affirmed at General Term.

The action was brought on an open policy of insurance issued by the Defendants to the Plaintiff, which insured him "against any loss or damage he might sustain on cargoes, on account of himself or others; on his own boats, or boats belonging to others, and running in the New York and Indiana Line, by charter or on commission, loaded at Buffalo, or at other ports or places," to be entered on the policy.

The recovery was under this policy for the loss upon a cargo of corn, shipped at Buffalo, on the Plaintiff's canal-boats Fiske and Chipman, and insured from Buffalo to New York, with the privilege of transshipment from the said boats to the lake boat Hudson. The Hudson, to which the corn was transshipped, was placed at Albany in tow of the steamer Saratoga, to be towed to New York in the usual manner. The Plaintiff had no control of the steamer, or of its officers or crew.

On the passage to New York the Hudson struck a rock, by which holes were made in her bottom-planking. She immediately sunk. This injury occurred about midnight on Saturday, October 14, 1854, near Castleton, a short distance below Albany.

The Plaintiff, who resided at Buffalo, received notice of the accident, and immediately, on Monday morning, informed the Defendants' agent, through whom the insurance was effected. The agent then assured the Plaintiff (as the latter testified) that the company would take charge of the cargo, and manage it themselves ; that they preferred to do so. On the next day, Tuesday, the 17th, the Defendants appeared, took charge of the cargo, and removed and sold it on account of the company. The net proceeds amounted to $1,556.82, which were received and retained by the Defendants.

The case has been twice tried. The verdict for the Plaintiff on the former trial was set aside, and a new trial was ordered. The consideration of the case by the Superior Court, as it appeared on that trial, will be found in 4 Bosworth, 1, where the facts, also proved on the second trial, are carefully and fully stated.

On the second trial several questions of fact were very sharply contested, all which were submitted to the jury, under instruction from the Court, and they were found in favor of the Plaintiff. The questions of law now pressed on our consideration will appear from the following examination of the case.

The due delivery of the policy of insurance to the Plaintiff as a valid, binding instrument, is not disputed. It bound the Defendants to make good to him all damages he might sustain on cargoes on account of himself or others shipped, as this cargo was, in his boats, with the express permission of transshipment to the lake boat Hudson, the injury to which caused the loss complained of. The Plaintiff was a common carrier, and received the grain for transportation. As such he was bound to make safe delivery at the place of destination, unless excused by the act of God or the public enemy. His obligation to the owner of the cargo, as well as his interest therein for advances and freight, vested in him an insurable interest to the extent of the fair value of the property covered by the contract of indemnity (12 Barb. 595 ; 20 N. Y. 177, per Allen, J. ; 19 N. Y. 401 ; 26 N. Y. 126, per Selden, J. ; 32 N. Y. 427). These authorities afford a complete answer to the first objection here urged, that the Plain-

8

tiff had no insurable interest in the property.   It is next urged
that the Plaintiff was guilty of negligence in omitting to take
immediate steps to ascertain the extent of the loss and damage,
and to prevent further injury.    Whether guilty of negligence or
not, and what damages resulted therefrom, if any, became a ques-
tion for the jury under the evidence.   Much evidence was given
bearing on this subject.   The learned judge before whom the trial
was conducted called the attention of the jury particularly to
this branch of the case, and instructed them that it was the duty
of the Plaintiff and his agents, having the property in charge
when the injury occurred, to do whatever a prudent and careful
man would, in such an event and under such circumstances, to pre-
serve it and prevent further loss ; and that in determining what
could have been done they must look at the facilities at hand for
removing the cargo from the boat, and taking other measures for
its preservation.   He added that, on their determination of this
question, would depend the amount for which the Defendants
should be held liable in case they should first arrive at the con-
clusion that the Plaintiff was entitled to recover.

These remarks and instructions presented the case in its true
aspect, and were sound in law.   The Defendant plainly has no
cause of complaint as regards the manner in which this branch of
the case was disposed of in the Court below.

The policy gave to the Plaintiff the right to transship the grain
from the canal-boats to the lake boat Hudson, and it was so
transshipped.   It was claimed on the trial that the Plaintiff, at
the time he procured the insurance, falsely represented the strength,
safety, and the capacity of the Hudson to carry in one parcel
the grain shipped in the canal-boats at Buffalo, and that the
Defendants were therefore discharged from liability.   Evidence
was given in regard to the representations alleged to have been
made, and also in regard to the size, strength, capacity, and age
of the vessel, with a view to establish their truth or falsity.   Thus
this question became one of fact for the determination of the jury,
and the judge charged them that they were to judge how far the
evidence in the case supported the Plaintiff's representations ; and

if they should find that it did not, they would then find for the Defendants without further examination of the case. The Defendants clearly had all their rights preserved to them as regards this subject of defence. All they could ask was that the evidence should be laid before the jury, with proper instructions from the Court as to the law. The jury having found against the Defendants, after a full consideration of the evidence, it must be assumed that the proof was insufficient to sustain the defence.

It appeared on the trial that the Hudson was placed the third boat out on the side of the steam-tug; and it was claimed by the Defendants that her captain insisted on this position against the protest of the officers and crew of the tug, and under the assurance from them that she must take that place at her peril. The evidence was somewhat conflicting as to what did occur when the tow was assigned to, or took her position. The judge, however, properly charged in substance that, if the boat was placed in an unsafe position by the Plaintiff, or his agents having her in charge, against the remonstrance of the officers and crew of the tug, and the loss and damage occurred in consequence, then the Plaintiff could not recover. This was undoubtedly the true view of the case, and was a correct presentation of it to the jury.

An improper and dangerous position of the tow, assumed by its master, could not affect the Defendants' liability, unless it occasioned or contributed to the loss and damage. So it was held in Haley *v.* Earle (30. N. Y. 208) that although the Plaintiff had been guilty of negligence, yet if his negligence had nothing to do with the occurrence, the Defendant has no right to seek, on that account, to excuse the negligence on his part which caused the injury to the Plaintiff. It follows that the judge was right in refusing to charge that the mere fact (if established) that the master of the tow placed her in an unsafe position, would not entitle the Defendants to a verdict. They were unquestionably bound to go further and show, to the satisfaction of the jury, that such improper or negligent act contributed to the injury complained of.

The judge was also right in holding that the measure of dam-

ages was to be determined according to the price of the grain at the place of the disaster. By the terms of the policy the loss or damage was to be estimated according to the true and actual value of the property at the time the same should happen.

The contract was one of indemnity to the extent of the value of the grain, and evidently contemplated a shifting market and price which would become fixed on the occasion of disaster. This rule of liability fairly meets and answers all the exigencies of the case, and accords with the intentions and purposes of the parties. I think it evident that the contract contemplated an allowance for damages, to be estimated according to the value of the property at the time and place of injury.

Several exceptions were taken to admission and rejection of evidence, but none of them at all affect the merits of the controversy.

The objections to a recovery urged on this appeal have all been above considered, and we are of the opinion that no error exists in the case demanding a reversal of the judgment at the instance of the Defendants. The Plaintiff might well complain of the deduction directed to be made for the net proceeds received by the Defendants on the sale of the grain, taken by them from the sunken boat. It seems that the cargo was, immediately on the happening of the injury, taken in charge by the company and sold on Defendants' account ; and the net proceeds of the sale, $1,556.82, were retained by them. This course of procedure entitled the Plaintiff to recover for a total loss. By taking possession of the property, and disposing of it, and retaining the avails, the Defendants made the loss total to the Plaintiff, and were estopped from denying that the loss was otherwise than as they had assumed it to be and made it.

But this was an error favorable to the Defendants ; and the Plaintiff having omitted to appeal, must be deemed to have accepted the judgment so rendered.

The judgment should be affirmed, with costs.

All concur.

Affirmed.                                        JOEL TIFFANY,
                                                      State Reporter.